```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Kenneth A. Kalar
and Janet M. Kalar

    v.                                     Civil No. 16-cv-149-LM
                                           Opinion No. 2017 DNH 074

Bank of America Home Loans
and Carrington Mortgage Services


**O R D E R**

    Kenneth and Janet Kalar, proceeding pro se, bring suit against Bank of America Home Loans ("Bank of America") and Carrington Mortgage Services ("Carrington"), alleging that Carrington falsely reported to credit agencies a debt that had been discharged in bankruptcy, thereby harming the Kalars' credit rating. The Kalars also allege that Bank of America contributed to the harm by transferring servicing of the debt to Carrington during the pendency of their bankruptcy action and without notice to them.

    The court begins with a summary of the procedural history. In an order dated June 27, 2016, the court granted defendants' motion to dismiss the Kalars' original complaint "without prejudice to the Kalars' ability to file an amended complaint setting forth facts sufficient to state plausible claims against defendants." Doc. no. 12 at 8. The Kalars filed their amended complaint (doc. no. 13), and defendants again moved to dismiss,

asserting that the amended complaint fails to adequately state a claim for relief (doc. no. 16).

While defendants' motion to dismiss was pending, the Kalars filed two motions in an effort to add a new claim to their amended complaint. First, the Kalars filed a "motion of intent to file additional claim" (doc. no. 22), in which they assert that they recently learned of new information giving rise to an additional claim against Bank of America. The Kalars next filed a "motion to add an additional claim against Bank of America." Doc. no. 24. In the second motion, the Kalars allege the basis for the additional claim: that Bank of America provided false information to Federal Savings Bank sometime between July and October 2016.[1]

In light of the Kalars' pro se status, the court construes their first motion (doc. no. 22) as a motion for leave to file an addendum to their amended complaint. The court grants that motion and construes the Kalars' second motion (doc. no. 24) as the addendum to their amended complaint. See, e.g., Collymore v. McLaughlin, No. 16-cv-10568-LTS, 2016 WL 6645764, at *1 n.1

---

[1] In their objection to the Kalars' "motion to add an additional claim against Bank of America," defendants characterize the Kalars' new claim as alleging that Bank of America made misrepresentations to consumer reporting agencies. The new claim, however, appears to allege that Bank of America made misrepresentations to Federal Savings Bank, not to consumer reporting agencies.

(D. Mass. Nov. 8, 2016) (construing pro se plaintiff's additional filing as a supplement to his complaint for purposes of defendant's motion to dismiss).

As defendants filed the motion to dismiss the amended complaint before the Kalars filed the addendum to that complaint, the court will address only the amended complaint in this order.

**Standard of Review**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Because the Kalars are proceeding pro se, the court is obliged to construe their complaint liberally. See Erikson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal citations omitted) ("a pro se complaint, however inartfully pleaded, must

be held to less stringent standards than formal pleadings drafted by lawyers"). However, "pro se status does not insulate a party from complying with procedural and substantive law. Even under a liberal construction, the complaint must adequately allege the elements of a claim with the requisite supporting facts." Chiras v. Associated Credit Servs., Inc., No. 12-10871-TSH, 2012 WL 3025093, at *1 n.1 (D. Mass. July 23, 2012) (quoting Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (internal citation and quotation marks omitted)).

## Background[2]

On May 4, 2006, Kenneth and Janet Kalar executed a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide"), in exchange for a loan of $57,500. That same

---

[2] The court draws these facts from the Kalars' amended complaint (doc. no. 13), filings in the Kalars' bankruptcy proceeding, and a copy of one of the Kalars' notes and one of the Kalars' mortgages, which were attached as exhibits to defendants' motion to dismiss. See Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (noting that a court may consider official public records and documents sufficiently referred to in the complaint on a motion to dismiss without converting the motion to one for summary judgment). In addition, the court considers the factual allegations in the original complaint to the extent they give context to and help explain the Kalars' claims. See Torosian v. Garabedian, 206 F Supp. 3d 679, 680 n.1 (D. Mass. 2016) ("However, because plaintiffs are proceeding pro se, the Court considers the factual allegations in the original complaint . . . to be part of the amended complaint . . . .").

4

day, the Kalars granted a mortgage on their home to Countrywide to secure the loan, with Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee in its capacity as nominee for Countrywide.  It appears that prior to the May 4, 2006 note and mortgage, the Kalars had previously executed a separate promissory note and granted another mortgage on their home.  The court will therefore refer to the note and mortgage dated May 4, 2006, as the "second note" and the "second mortgage," respectively.

On October 13, 2010, the Kalars instituted a voluntary Chapter 13 bankruptcy proceeding in the United States Bankruptcy Court for the District of New Hampshire.  See In re Kenneth and Janet Kalar, Bk. No. 10-14397-JMD (Bankr. D.N.H. 2010).  On January 18, 2011, the bankruptcy court granted the Kalars' motion to deem the second mortgage unsecured.  In the order granting that motion, the court stated that the second mortgage would be deemed void upon the Kalars' completion of their Chapter 13 plan and the court's issuance of a discharge under 11 U.S.C. § 1328(a).

Prior to the Kalars' bankruptcy filing, Bank of America was the loan servicer on the second mortgage.  Sometime in September or October 2011, after the bankruptcy court deemed the second mortgage unsecured but prior to the Kalars completing their bankruptcy plan, Bank of America transferred servicing

5

responsibilities on the second mortgage to Carrington.  Both Bank of America and Carrington claim to have sent the Kalars letters in October 2011 informing them of the transfer.  The Kalars did not receive either letter.

The Kalars completed their Chapter 13 plan and on November 5, 2013, the bankruptcy court granted them a discharge.  The bankruptcy case was closed on January 14, 2014.  On April 25, 2014, MERS recorded in the Strafford Country Registry of Deeds a release of the second mortgage and any liability for the Kalars on the second note.  On June 12, 2014, MERS sent a copy of the release to the Kalars, with a cover letter confirming the release.

On October 16, 2015, the Kalars obtained a copy of Janet's credit report.  The report allegedly shows that after the bankruptcy court discharged the second mortgage, Carrington reported to credit reporting agencies that the Kalars had missed and/or still owed payments relating to the second mortgage.  The report also shows that Bank of America transferred servicing rights of the second mortgage to Carrington.  The Kalars allege that they did not learn of the transfer until they saw the report.

The Kalars contacted Carrington regarding the credit report.  In a letter dated February 1, 2016, Carrington informed the Kalars that it had notified the credit reporting agencies of

6

the errors, and requested that the agencies delete the "tradeline" reported by Carrington and send the Kalars a copy of Carrington's request. The Kalars state as of February 4, 2016, the report no longer contained the inaccurate references to the second mortgage.

The Kalars also contacted Bank of America regarding the entry on Janet's credit report showing the transfer of servicing rights on the second mortgage. In a letter dated February 10, 2016, Bank of America responded by stating that it had provided accurate information to the credit reporting agencies.

During the period when the Kalars were attempting to fix the inaccurate entry on Janet's credit report, Janet alleges that defendants treated her disrespectfully and that she "took verbal abuse on a daily basis."

**Discussion**

Defendants move to dismiss the amended complaint, arguing that it fails to state a plausible claim for relief. The amended complaint asserts a claim against Bank of America for violation of the implied covenant of good faith and fair dealing and a claim against Carrington for "defamation of character/libel."[3] The court addresses these claims below.

---

[3] The amended complaint also references a violation of the Fair Credit Reporting Act ("FCRA") and a violation of the bankruptcy stay. See doc. no. 13 at 3-4. The Kalars make

7

I. Implied Covenant of Good Faith and Fair Dealing

The Kalars' claim against Bank of America arises out of Bank of America's transfer of servicing rights on the second mortgage to Carrington during the pendency of the Kalars' bankruptcy case. The Kalars allege that Bank of America violated the implied covenant of good faith and fair dealing in the second mortgage by "[s]elling [their] account to Carrington Mortgage Services [which] allowed Bank of America Home Loans to be compensated for their loss and destroy the Plaintiffs' ability to secure credit post Chapter 13, at reasonable costs to the Plaintiffs." Doc. no. 13 at 2.

Under New Hampshire law, in "every agreement there is an implied covenant that the parties will act in good faith and fairly with one another." Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 126-27 (quoting Birch Broad., Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192, 198 (2010) (internal quotation marks omitted)). "A necessary prerequisite to a claim for breach of the implied covenant of good faith and

---

clear, however, that the amended complaint "is two-fold: against Bank of America Home Loans under Good Faith and Fair Dealing; and Carrington Mortgage Services under Defamation of Character/Libel." See id. at 2. To the extent the Kalars intended, however, to allege additional claims based on violations of the FCRA and the bankruptcy stay, those claims would fail for the reasons discussed below.

8

fair dealing is a contract between the parties." Moore, 848 F. Supp. 2d at 127.

There is no dispute that Bank of America was the loan servicer on the second mortgage. "A mortgage servicer that is not a party to the mortgage contract owes no implied covenant to the mortgagor." Mudge v. Bank of Am., N.A., No. 13-cv-421-JD, 2015 WL 1387476, at *5 (D.N.H. Mar. 25, 2015), reconsideration denied, No. 13-CV-421-JD, 2015 WL 1954343 (D.N.H. Apr. 29, 2015), appeal dismissed (Oct. 16, 2015); see also McCusker v. Ocwen Loan Servs., LLC, No. CV 14-13663-MGM, 2015 WL 4529986, at *6 (D. Mass. July 27, 2015) ("Loan servicers owe no duty to plaintiffs arising out of mortgage contracts because loan servicers are technically not parties to the mortgage."). As the loan servicer, Bank of America was not a party to the second mortgage and therefore owed no implied duty to the Kalars. Accordingly, the Kalars cannot maintain a claim against Bank of America for breach of the implied covenant of good faith and fair dealing in the second mortgage.[4]

---

[4] Although it is undisputed that Bank of America was the servicer of their mortgage, the Kalars also describe themselves and the Bank as having "a contract that was a second mortgage." Doc. no. 13 at 1. The Kalars, however, do not allege that Bank of America ever held the second mortgage. Even assuming that Bank of America was a party to the mortgage, the breach of the implied covenant of good faith and fair dealing claim would still fail. The Kalars do not explain how the act of transferring service responsibilities on the second mortgage, prior to the bankruptcy court's discharge of the mortgage, could

9

II.  Defamation of Character/Libel

The Kalars allege that Carrington is liable for defamation because it improperly reported for 46 months that they had missed payments on the second mortgage after the mortgage was discharged through bankruptcy.[5]  They allege that Carrington knew the information was false when it provided the information to the consumer reporting agencies.  Defendants argue that this claim is preempted by a provision of the Fair Credit Reporting Act, 15 U.S.C. § 1681t(b)(1)(F), and should be dismissed.

   A.   Preemption Under the FCRA

"The FCRA imposes obligations on [consumer reporting agencies] and users of consumer information and provides for enforcement by various federal agencies." Chiang v. Verizon New England Inc., 595 F.3d 26, 34 (1st Cir. 2010) (citing 15 U.S.C. § 1681s).  The FCRA also imposes obligations on "furnishers" of information to consumer reporting agencies, which includes prohibitions against providing inaccurate information to those

---

constitute a breach of the implied covenant of good faith and fair dealing in the mortgage agreement, how this action violated the bankruptcy stay, or how they were harmed by such an action.

[5] The Kalars state in their objection to the motion to dismiss that Carrington misreported information to the consumer reporting agencies for 52 months.  See doc. no. 18 at 3.  The precise amount of time Carrington allegedly misreported the Kalars' information is not material to the court's analysis.

10

agencies, see § 1681s-2(a)(1), and specific duties in the event of a dispute over furnished information, see § 1681s-2(b). A "furnisher of information" under the FCRA is defined as "an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, and Trans Union." Chiang v. MBNA, 634 F. Supp. 2d 164, 167 (D. Mass. 2009) (internal quotation marks, citation, and alteration omitted), aff'd, 620 F.3d 30 (1st Cir. 2010).

The FCRA contains a broad preemption provision, which provides that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Thus, the FCRA preempts all state law claims against a furnisher of information based on conduct regulated by § 1681s-2, which includes providing inaccurate information to consumer reporting agencies.

The Kalars specifically allege that their defamation claim against Carrington is based on Carrington reporting inaccurate information to consumer reporting agencies, and they reference the FCRA's prohibition against that action. See doc. no. 13 at 2 ("Due to false information reported/stated to the Credit

11

Reporting Agencies (CRA's) by Carrington Mortgage Services, for 46 consecutive months, and the resulting financial harm the Plaintiffs are claiming Defamation of Character/Libel."); see id. at 4 (stating that the Kalars' defamation claim is based on a violation of the "FAIR CREDIT AND REPORTING ACT, section 623").[6] The Kalars' defamation claim is based on conduct regulated by § 1681s-2 and is therefore preempted by § 1681t(b)(1)(F) of the FCRA.[7]

B.  Section 1681h(e)

Although not raised by the Kalars, defendants note the existence of a separate and narrower preemption provision under the FCRA: § 1681h(e). Defendants assert that this provision could be interpreted as allowing certain state law defamation claims to proceed even when they are based on conduct regulated

---

[6] Section 623 is the FCRA section number for § 1681s-2.

[7] To the extent the Kalars intended to allege a violation of the FCRA based on Carrington's allegedly inaccurate credit reporting activity, as explained in the court's order granting defendants' motion to dismiss the original complaint, that conduct does not give rise to a private right of action under the FCRA. See Chiang, 595 F.3d at 35 ("Section 1681s-2(a) prohibits any person from 'furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.' Id. § 1681s-2(a)(1)(A). Congress expressly limited furnishers' liability under § 1681s-2(a) by prohibiting private suits for violations of that portion of the statute. Id. § 1681s-2(c)(1).").

by § 1681s-2.  Defendants argue, however, that § 1681h(e) is not implicated by the Kalars' defamation claim.

Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Thus, if applicable, this provision preempts certain state common law claims, including defamation, against furnishers of information unless the plaintiff can show that the furnisher acted with malice or willful intent.

This provision applies, however, only to a cause of action "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report . . . ."  § 1681h(e).  Both section 1681g and section 1681h, by their terms, impose obligations on consumer reporting agencies.  See, e.g., Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181, 194 (D. Mass. 2006) ("Sections 1681g and 1681h

13

deal with disclosure of information by credit reporting agencies.). Both section 1681m and the remaining portion of § 1681h(e) address users of information disclosed in a credit report, who then take adverse action against the consumer based on that information.[8] See id.

As Carrington points out, § 1681h(e) is not applicable here. Carrington is not a consumer reporting agency, the Kalars have not sued it in its capacity as a "user" of their consumer report, and the Kalars do not allege that Carrington took adverse action against them based on information in their consumer report. Thus, the narrower preemption provision in § 1681h(e) does not apply to the Kalars' defamation claim against Carrington. See Islam, 432 F. Supp. 2d at 194 (holding that § 1681h(e) did not apply to defendant, which was the "alleged furnisher of the incorrect information"); see also Gonzalez-Bencon, 759 F. Supp. 2d at 237 (same); Leet v. Cellco P'ship, 480 F. Supp. 2d 422, 430 (D. Mass. 2007).[9]

---

[8] "A user of a consumer report is a person that takes actions on the basis of information contained in consumer reports." Gonzalez-Bencon v. Doral Bank, 759 F. Supp. 2d 229, 237 n.4 (D.P.R. 2010) (citing § 1681m).

[9] Defendants also argue that even if § 1681h(e) applies to the Kalars' defamation claim, the broader preemption provision in § 1681t(b)(1)(F) would still bar the claim. The court agrees. Although the First Circuit has not yet addressed the apparent conflict between § 1681h(e) and § 1681t(b)(1)(F), two federal appellate courts have recently analyzed the apparent conflict between the two FCRA preemption provisions, and have

14

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss the amended complaint (doc. no. 16) is granted. Plaintiffs' "motion of intent to add an additional claim" (doc. no. 22) is construed as a motion for leave to file an addendum to the amended complaint and is granted. Plaintiffs' "motion to add an additional claim" (doc. no. 24) is terminated and construed as an addendum to plaintiffs' amended complaint.

Bank of America shall file its answer or motion to dismiss the addendum **on or before May 5, 2017.** Carrington Mortgage Services is dismissed from the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 14, 2017

cc: William P. Breen, Esq.
    Christian B. W. Stephens, Esq.
    Janet M. Kalar, pro se
    Kenneth A. Kalar, pro se

---

held that § 1681t(b)(1)(F) preempts all related state law causes of action against furnishers of information. See Purcell v. Bank of Am., 659 F.3d 622, at 625-26 (7th Cir. 2011); Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45 (2d Cir. 2011). The court finds the reasoning set forth in Purcell and Macpherson persuasive, and they appear to be the only Circuit decisions to engage in a detailed analysis of the apparent conflict between § 1681h(e) and § 1681t(b)(1)(F). Therefore, even if § 1681h(e) applied to the Kalars' defamation claim, the claim would be preempted by § 1681t(b)(1)(F).

15